Estate of J. Clinton Spencer, Deceased, by John A. Daly, Robert E. McAllister and Charles D. Jewell, Executors v. Commissioner.
Estate of Spencer v. Commissioner
Docket No. 109641.
United States Tax Court
1943 Tax Ct. Memo LEXIS 422; 1 T.C.M. (CCH) 695; T.C.M. (RIA) 43111; March 3, 1943
*422 Petitioners made an overpayment of estate tax. Held, a claim for refund of a portion of the overpayment, consisting of a letter written by one of the executors enclosing a form of acceptance of an overassessment proposed by the Internal Revenue agent, was filed within three years after the tax was paid; held, further, with respect to the balance of the overpayment, no claim for refund thereof was filed within the statutory period. Charles D. Jewell, Esq., 2710 Arlington Ave., Riverdale, Bronx, New York City, for the petitioners. James C. Maddox, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined a deficiency in estate tax of $39,413.72 and in his answer makes claim for a total deficiency of $78,508.31. Petitioners claim in their amended petition an overpayment of $25,538.32. A stipulation filed by the parties at the hearing has the effect of wiping out any deficiency and disclosing a substantial overpayment of tax. The only question for us to decide, therefore, is whether the amount overpaid or any part of it may be refunded. Our jurisdiction in the premises rests upon section 319(c) of the Revenue Act of 1926, as amended by section *423 504(d) of the 1934 Act, which provides: If the Board finds that there is no deficiency and further finds that the executor has made an overpayment of tax, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount, shall, when the decision of the Board has become final, be credited or refunded to the executor as provided in section 3220 of the Revised Statutes, as amended. No such refund shall be made of any portion of the tax unless the Board determines as part of its decision that it was paid within four years (or in the case of a tax imposed by this title, within three years) before the filing of the claim or the filing of the petition, whichever is earlier. With respect to credit for state death duties allowed against the Federal estate tax imposed by the 1926 Act, as amended, section 802 (a) of the Revenue Act of 1932 allows a credit to the extent of 80 per centum of the 1926 Federal tax, provided such state taxes are paid and "credit therefor claimed within four years after the filing of the return" or, if a petition is filed for redetermination of a deficiency, within such four-year period "or before the expiration of 60 days after the *424 decision of the Board becomes final." The section also provides: Refund based on the credit may (despite the provisions of section 319) be made if claim therefor is filed within the period above provided. [i.e., within four years after filing of the return or 60 days after the decision of the Board becomes final.] * * * [The Facts] Petitioners are the executors of the Estate of J. Clinton Spencer, who died a resident of New York on September 10, 1937. The estate tax return was filed on December 10, 1938, with the Collector for the second district of New York. The total tax shown due therein, $247,805.66, was paid on that date. The following items reported on the return as filed are pertinent to the present controversy: (1) an item of $12,761 was included twice in the gross estate: (2) the optional valuation date was used and, as required by the then outstanding regulations, there was included in the gross estate $57,085.18 of income received by the estate during the year following decedent's death; (3) executor's commissions and attorney's fees were taken as deductions in the respective amounts of $92,170.56 and $30,000; and (4) the tax imposed by the 1926 Act, as amended, *425 was shown on the return to be $62,422.69, against which the full 80 per cent credit for state taxes, or $49,938.15, was claimed. At the time the tax was paid an audit of the tax computation by the Collector disclosed that petitioners had made a mathematical error in calculating the total estate tax in the sum of $5,203.32 in favor of the Government. This was noted in a letter addressed three days later by the Collector to one of the executors, which stated that it was agreed there was an excess collection and that "it was your desire [the executor's] to have the excess collection remain here to the credit of the estate until the final audit of the return was completed, at which date proper adjustments would be made." Thereafter, on March 14, 1940, the executors were furnished a copy of the Internal Revenue agent's report of his audit of the estate. The report disclosed an overassessment of $8,470.16 and the executors were advised, if they agreed to the adjustments, to execute an enclosed form of acceptance "in order that a certificate of overassessment may be issued without unnecessary delay." The proposed overassessment was arrived at by eliminating the mathematical error of $5,203.32 *426 referred to in the preceding paragraph, and/by deducting $12,761 from the gross estate on account of the duplication of the item in that amount in gross estate as reported. The proposed decrease in tax resulted, of course, in lowering the amount as a credit for state inheritance tax against the Federal tax imposed by the 1926 Act, as amended, for the permissible credit may not exceed 80 per cent of such Federal tax. The agent's report, therefore, reduced the credit from $49,938.15, as claimed on the return, to $47,883.88, but this amount was tentatively allowed as a credit in computing the proposed overassessment. On May 12, 1940, one of the executors addressed a letter to the Chief Estate Tax Officer of the second New York district, enclosing the acceptance of the proposed determination (Form 1244) and a form of acknowledgment (Form 1245), both of which were executed by the three executors. The form of acceptance stated: The proposed determination of the estate * * * tax liability of the above-named estate * * * is hereby accepted. At the bottom of the form was a printed notation that "This acceptance is subject to the approval of the Commissioner and is not an agreement as provided *427 under section 606 of the Revenue Act of 1928." The letter of the executor which enclosed these executed forms concluded with this paragraph: Will you kindly have issued a certificate of overassessment and advise approximately when this Estate may expect to receive your check in the amount of $8,470.16 in satisfaction thereof. The file was then sent to respondent's office in Washington. A letter dated June 21, 1940 was sent to the executors by the Deputy Commissioner advising of a proposed deficiency of $47,883.88 - * * * due to the disallowance of credit for State estate, inheritance, legacy or succession taxes. To date the evidence necessary to eliminate this deficiency has not been received. Please advise this office when you will submit the required evidence. On January 14, 1941, a similar letter was mailed to the executors, but disclosing that the proposed deficiency was $39,413. 72 due to disallowance of the credit for state taxes and requesting advice as to when the required evidence would be submitted. There was no further correspondence and, on October 13, 1941, a deficiency notice determining a deficiency in the last-named amount, $39,413.72, was issued. It will be noted *428 that this deficiency was based upon failure to substantiate payment of state inheritance taxes; and that the difference of $8,470.16 between that figure and the deficiency of $47,883.88, mentioned in the earlier letter of June 21, 1940, is the amount of the proposed overassessment previously accepted by the executors. The parties have stipulated that state taxes of $68,734.30 were properly paid, and it follows that full credit of 80 per cent of the basic tax imposed by the 1926 Act, as amended, is allowable. Those taxes have been paid and the credit therefor claimed within the time prescribed by section 802(a) of the Revenue Act of 1932. Such credit, however, will be less than the credit of $49,938.15 taken on the return, for the basic tax computed upon the stipulated figures will be lower than that reported. [Opinion]
We think the above facts spell out a claim for refund of the amount of $8,470.16 which was the subject of the executor's acceptance of May 14, 1940. See ; ; ; *429 . This was within three years from the date the tax was paid. It is true no formal claim was filed upon the form prescribed by the Commissioner, but the regulations do not require that this be done. Regulations 80 (1937 Edition), article 99. Certainly the respondent was fully informed of the facts constituting the basis of the claim, and the executor's letter requesting the issuance of a certificate of overassessment and advice as to when refund could be expected cannot, with justice, be regarded as other than a claim or demand for refund. Moreover, the subsequent action of the Commissioner demonstrates that he not only received the claim, but in effect approved it; for, as stated above, the deficiency determined was in the amount of the disallowed credit for state taxes less the sum of $8,470.16 that is in dispute. We conclude that claim for refund of the overpayment, at least to the extent of $8,470.16, was made within the time prescribed by the statute. The increase deficiency asserted in respondent's answer was occasioned by his disallowance of the claimed executors' commissions in the sum of $92,170.66 *430 and attorneys' fees in the sum of $30,000. The parties, however, who have stipulated not only that these deductions were allowable, but that the total amounts allowable for executors' commissions and attorneys' fees were $97,146.54 and $66,082.59, respectively. In addition it is agreed that $2,023.83 of administration expenses not claimed in the return are allowable. The tax, of course, was overpaid in relation to the extent that these stipulated amounts exceeded the figures deducted on the return, but no claim for refund of the resultant overpayment was filed within three years after the payment was made. In fact, counsel for petitioners conceded at the hearing that the first time the total amounts of executors' commissions, attorneys' fees, and administration expenses, as now stipulated, were substantiated was in an affidavit submitted to the Bureau of Internal Revenue on November 14, 1942. Furthermore, the filing of the petition, which occurred on January 10, 1942, was more than three years after the overpayment was made The remaining item is the interim income of $57,085.18 accruing during the year after death, which petitioners included within the gross estate. On March 3, 1941, *431 the Supreme Court decided , wherein it was held that the Commissioner's Regulations were an unwarranted extension of the statute in this respect and that income of an estate for the year after death need not be included as part of the gross estate if the optional valuation date is used. Consequently, the parties here have stipulated that the net estate may be reduced by the amount of $57,085.18. However, there has been no claim for refund filed for overpayment resulting from this exclusion. There is nothing to support petitioners' contention that a new statutory period of limitations commenced on March 3, 1941, when , was decided. Moreover, on that date there still remained approximately nine months before expiration of three years from the date of payment during which petitioners with due diligence could have filed a claim and protected their rights. Our jurisdiction is limited to determining whether the overpayment as to this item was paid within three years before the filing of a claim for refund or the filing of the petition. Our determination is that it was not. *432 Decision will be entered that there is no deficiency, but, in fact, an overpayment in the amount to be computed by the parties; and that claim for refund of $8,470.16 of the amount overpaid was filed within three years after such payment. Decision will be entered under Rule 50.